**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

John Doe No. 1, et al.                          *
                                                *
          Plaintiffs,                           *
                                                *
v.                                              *          Civil No. RDB-08-cv-1281
                                                *
Odenton Volunteer Fire Company Inc.             *
of Odenton Anne Arundel, et al.                 *
                                                *
          Defendants.                           *
                                                *

*     *     *     *     *     *     *     *     *     *     *     *     *

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND COSTS**

**I.          Introduction**

          Louis D'Camera, Past President of Odenton Volunteer Fire Company Inc. of Odenton

Anne Arundel ("Company") and Past Quartermaster for the Anne Arundel County Fire

Department, sexually assaulted both John Doe No. 1 and John Doe No. 2. Am. Compl. at para. 9.

John Doe No. 2 was a minor at the time of the sexual assault. Am. Compl. at para. 29. The

defendants in this case were well aware of Mr. D'Camera's misconduct, including a police

complaint made by another member of the Company (also a minor) in 1998 and ongoing

complaints from the plaintiffs about the assaults. Am. Compl. at para. 10.a. The defendants failed

to take appropriate action in response to these complaints. Am. Compl. at para. 43. The assaults

on the plaintiffs stopped in June 2005 not as a result of any action taken by the Company or the

County, but because Mr. D'Camera was arrested on June 24, 2005 in Baltimore for indecent

exposure and committing a sex act with an 18-year-old male. Am. Compl. at para. 43. Shortly

thereafter, plaintiffs filed police reports, and less than one week later Mr. D'Camera committed

suicide. Am. Compl. at para. 44, 48.

The plaintiffs brought claims for violation of their federal and state constitutional rights, retaliation under Title VII of the Civil Rights Act of 1964[1], negligent retention and supervision, intentional infliction of emotional distress, and defamation. Plaintiffs submitted a Notice of Acceptance of Offers of Judgment on May 18, 2009, and the Court entered judgment in favor of the plaintiffs on May 20, 2009. Pursuant to Fed. R. Civ. P. 68 and defendants' offers of judgment, plaintiffs are entitled to reasonable attorneys' fees and costs accrued as of February 25, 2009. Further, as a result of the Rule 68 offers of judgment, plaintiffs are the prevailing party for purposes of their claims under 42 U.S.C.S. Section 1983 and Title VII of the Civil Rights Act of 1964. Grissom v. Mills Corp., 549 F.3d 313, 319 (4th Cir. 2008). Pursuant to 42 U.S.C.S. Section 1988, plaintiffs are entitled to reimbursement of reasonable fees and costs accrued to date, including time spent defending their entitlement to attorneys' fees. Trimper v. City of Norfolk, 58 F.3d 68 (4th Cir. 1995) (the time spent defending entitlement to attorneys' fees is properly compensable under 42 U.S.C.S. Section 1988).

## II.   Plaintiffs Are Entitled To a Full Compensatory Award of Attorneys' Fees and Costs

The principal congressional objective in providing for reasonable attorneys' fees in civil rights litigation was to provide an incentive to competent attorneys to accept these difficult but socially important cases on behalf of plaintiffs on a contingent fee basis. H.R. Rept. No. 94-1558, 94th Cong. 2d Sess. 6 (1976); S. Rep. 94-1001, 94th Cong. 2d Sess. 4 (1976). The purpose was to provide plaintiffs with representation by highly-skilled attorneys experienced in this complex area of law who are sufficiently well-capitalized to withstand protracted litigation against large corporate and governmental entities.

---

[1] Only John Doe No. 2 brought a claim for retaliation under Title VII of the Civil Rights Act of 1964, and only John Doe No. 1 brought a claim for defamation.

Civil rights cases can be, and often are, lost with no recovery made. The effect on a firm of such a loss can be catastrophic, where there has been a substantial expenditure of time and expense. Accordingly, when a case is successful, the attorneys' fee award must reflect several factors. First, a substantial amount of time will elapse before payment of fees and recovery of expenses. Second, the societal interests at stake are important. If the attorneys' fees award does not reflect these economic realities, the capable plaintiff attorney will either drop out of civil rights litigation, or work on the defense side where hourly fees are substantial and paid monthly. If this happens, the congressional intent behind the attorneys' fees provisions of the Civil Rights Attorneys' Fees Award Act and Title VII will be thwarted and many meritorious cases not litigated.

Three overarching purposes have guided Congress and the courts in their development of the law regarding civil rights attorneys' fees. First, the fee shifting statutes are aimed at attracting competent counsel to prosecute federal civil rights claims, through assurance of full payment of fees to plaintiffs who prevail. Hensley v. Eckerhart, 461 U.S. 424, 429, 435 (1983); Blanchard v. Bergeron, 489 U.S. 87, 96 (1989). Second, the taxing of fees against persons who perpetrate civil rights violations is meant to serve as a disincentive to such violations in the future. Riverside v. Rivera, 477 U.S. 561, 574 (1986). Third, the prospect of substantial fee awards is intended to encourage defendants to settle meritorious civil rights claims promptly. Woods v. Graphic Communications, 925 F.2d 1195, 1207 (9th Cir. 1991). These important purposes will be furthered by full award of fees and costs incurred by the plaintiffs here.

A.      **Basis for Plaintiffs' Fee Request**

In Hensley v. Eckerhart, 461 U.S. 424 (1983), and Blum v. Stenson, 465 U.S. 886 (1984), the Supreme Court established the framework and methodology for calculation of the amount of

a reasonable attorney's fee to be awarded to the prevailing party. This calculation, commonly termed the "lodestar," is based upon "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" for the attorney's services. Hensley, 461 U.S. at 433; Lyle v. Food Lion, 954 F.2d 984 (4th Cir. 1992); Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174 (4th Cir. 1994). As guideposts in determination of the lodestar, the Supreme Court and the Fourth Circuit each have adopted the factors articulated by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). Hensley, 461 U.S. at 434 & n.9; Trimper v. City of Norfolk, 58 F.3d 68, 73 (4th Cir. 1995); Rum Creek, 31 F.3d at 175.[2] The Fourth Circuit has emphasized that the lodestar represents a presumptively reasonable fee award. Buffington v. Baltimore County, Md., 913 F.2d 113, 127 n.11 (4th Cir. 1990), cert. denied, 111 S. Ct. 1106 (1991); Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986) (there is a strong presumption that the lodestar figure represents a reasonable fee).

Upon consideration of the relevant factors under this formula, and after substantial reduction of time and rates charged in counsel's exercise of billing judgment, the lodestar fee requested here is $162,525.50 based upon hours spent on the litigation to date by plaintiffs'

---

[2] The Johnson factors are:

1.    time and labor expended;
2.    novelty and difficulty of the questions;
3.    skill required to perform properly the legal services rendered;
4.    attorney's opportunity costs in pressing the litigation;
5.    customary fee for like work;
6.    attorneys' expectations at the outset of the litigation;
7.    time limitations imposed by the client or circumstances;
8.    amount in controversy and the results obtained;
9.    experience, reputation, and ability of the attorneys;
10.   undesirability of the case;
11.   nature and length of the attorneys' relationship with the client; and
12.   attorneys' fees awards in similar cases.

Trimper, 58 F.3d at 73.

attorneys, multiplied by their hourly rates. Additionally, plaintiffs request reimbursement of $25,443.97 in litigation expenses, for a grand total of $187,969.47. As discussed below, the lodestar fee sought here is reasonable.

Section 1983 litigation is typically complex and multi-faceted, and in this case, involved multiple plaintiffs and multiple defendants. The decisional law is voluminous and continues to develop in the U.S. Supreme Court and the circuit courts of appeals. McDonald v. West Branch, 466 U.S. 284, 290 (1984) ("An arbitrator may not . . . have the expertise to resolve the complex legal questions that arise in Section 1983 actions"); Mosley v. Wilson, 102 F.3d 85, 95 (3d Cir. 1996) (Section 1983 is "complex jurisprudence"); Hope v. Connell, 1999 U.S. Dist. LEXIS 12555 (N.D. Tex. August 11, 1999) ("Section 1983 cases are typically more complex than most lawsuits"); ("the law pertaining to pleading a cause of action under Section 1983 involves complex language and concepts…"); and Bosa v. Board of Comm'rs, 1989 U.S. Dist. LEXIS 15373 (E.D. Pa. Dec. 19, 1989). Any violation of constitutional rights raises paramount issues of public concern, requiring attentive and competent lawyering.

Further, suing governmental units presents substantive and procedural issues not found in other lawsuits, including governmental immunity and navigating the Local Government Tort Claims Act, which provides a limited waiver of immunity in tort cases involving governmental units and allowing tort claimants to sue only in certain circumstances.

The complexity of this matter made the case undesirable to other attorneys. John Doe No. 1 spoke with multiple attorneys seeking representation, but those attorneys rejected the case due to the size and type of the litigation. Exh. 1 (Affidavit of John Doe No. 1).

1.      **The Hourly Rates Sought by Plaintiffs Reflect the Prevailing Market Rates in the Relevant Legal Community**

The hourly rates used in calculating the lodestar should be the "prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886 (1984); Plyler v. Evatt, 902 F.2d 273 (4th Cir. 1990). The "relevant" market for determination of hourly rates "is ordinarily the community in which the court where the action is prosecuted sits." Rum Creek Coal, 31 F.3d at 175, *citing* National Wildlife Federation v. Hanson, 859 F.2d 313 (4th Cir. 1988). The market rate for a particular attorney "may be proved by the rate which clients normally and willingly pay the petitioning attorneys." Rum Creek Coal at 175. The lodestar should be calculated using current, rather than historic, rates, in order to offset the effects of inflation and lost interest resulting from delay in payment of fees. Missouri v. Jenkins, 491 U.S. 274, 283-84 (1989); Daly v. Hill, 790 F.2d 1071 (4th Cir. 1986).

As set forth in the Affidavit of Joyce E. Smithey, all of the attorneys and paralegals at Rifkin, Livingston, Levitan & Silver, LLC ("RLLS") seek compensation at rates substantially lower than those they regularly charge to their paying clients:

| Name | Firm Rate | Rate Sought | % Reduction |
|------|-----------|-------------|-------------|
| Ellen Flynn | $395 | $290 | 26% |
| Charles S. Fax | $485 | $400 | 17% |
| Joyce E. Smithey | $395 | $290 | 26% |
| Lance Young | $205 | $180 | 12% |
| Michael Miller | $145 | $115 | 20% |
| Donna McHugh | $125 | $115 | 8% |
| Heather Pike | $115 | $110 | 4% |

RLLS partner Joyce E. Smithey seeks compensation at a diminished rate from that which she currently charges her paying clients - $290 per hour, as opposed to her regular rate of $395, a reduction of $105 per hour. Exh. 2 (Affidavit of Joyce E. Smithey). All of the other RLLS personnel are making voluntary rate cuts. Given these substantial reductions, the rates sought by plaintiffs are at or below the prevailing market rates in the local legal community for attorneys of similar experience and qualifications. See U.S. District Court Rules and Guidelines for Determining Attorneys' Fees in Certain Cases (D. Md. 2007) ("Rules and Guidelines"); Exh. 3 (Affidavit of Albert D. Brault, Esq.); and Exh. 4 (Declaration of Andrew M. Dansicker, Esq.). Even a survey from more than three years ago in the *Baltimore Business Journal* shows that the hourly rates charged by partners at Baltimore's DLA Piper ranged from $385-$900, while at Venable LLP partners' 2006 rates averaged $444 per hour. Exh. 5 (*Baltimore Business Journal* Survey).

2.      **The Staffing of the Case and Number of Hours Billed to Defendants By Plaintiffs' Counsel Are Reasonable and Appropriate**

The plaintiffs in this case are represented by RLLS. As Joyce Smithey attests in her affidavit, this case was staffed by RLLS in exactly the same manner as the firm would staff a comparable matter for one of its hourly, non-contingent clients. Exh. 2 (Affidavit of Joyce E. Smithey). This is precisely what Congress envisioned in enacting the Civil Rights Attorney's Fees Act - that by requiring those who violate the civil rights laws fully to reimburse lawyers who take on this important work, plaintiffs in such cases will be able to secure representation of the same quality and competency as any other party to litigation.

RLLS staffed the case primarily with one partner and one paralegal.[3] Exh. 2 (Affidavit of Joyce E. Smithey). Normally, a fully compensatory fee "will encompass all hours reasonably expended." Hensley v. Eckerhart, 461 U.S. 424, 435 (1983). The time expended and work performed by plaintiffs' counsel all was reasonable and necessary. Even so, counsel has exercised billing judgment by eliminating all time involving even arguably duplicative or excessive work, as well as work not necessary for proof of plaintiffs' claims. In this case, plaintiffs put substantial time into trying to resolve their dispute with defendants short of litigation. When those efforts failed, they filed a Complaint in the Circuit Court for Anne Arundel County along with a Motion for Order Permitting Plaintiffs to Proceed under a Pseudonym.[4] The County filed a Motion to Dismiss, or in the Alternative Motion for Summary Judgment and Motion to Stay Discovery. The Company also filed a Motion to Dismiss. The plaintiffs briefed responses to all of the motions. The plaintiffs then filed an Amended Complaint in the Circuit Court for Anne Arundel County. The Company then filed another Motion to Dismiss relating to the claims in the Amended Complaint. The defendants then filed a Notice of Removal to this Court. The County then filed another Motion to Dismiss and Motion for Summary Judgment. Once again, plaintiffs briefed responses to all of these motions. The Company then filed another Motion to Dismiss, to which the plaintiffs once again briefed a response. The Court held a hearing on these motions on December 17, 2008. The Court denied the Company's motion in its entirety and denied the County's motion on all but one count.

---

[3] Staffing of the case by RLLS was as follows: Partner Joyce Smithey supervised the case for the firm; Partner Charles Fax, a 1973 law school graduate, helped value the case for 2.8 hours; Partner Ellen Flynn handled the December 17, 2008 hearing before the Court due to Ms. Smithey's unavailability due to surgery (6.50 hours of Ms. Flynn's time was not charged to avoid duplicative charges for Ms. Flynn to review the file to get up to speed, nor did Ms. Smithey charge for 5.0 hours in assisting Ms. Flynn in her preparation for the hearing); and Lance Young, a 2006 law school graduate, handled legal research. Mr. Young's role in the litigation was cost effective because it ensured that lower level work, such as legal research, was done by an attorney who bills at the lowest rate.

[4] Counsel also filed a Charge of Discrimination for John Doe No. 2 at the United States Equal Employment Opportunity Commission ("EEOC") and pursued a retaliation case at the EEOC until receipt of a Notice of Right to Sue on February 27, 2008.

Subsequently the parties attended a Settlement Conference before Magistrate Judge Bredar. The parties also began discovery, with each plaintiff issuing a set of discovery to each defendant, and defendants serving four separate sets of discovery on plaintiffs. As stated above, Plaintiffs submitted a Notice of Acceptance of Offers of Judgment on May 18, 2009, and the Court entered judgment in favor of the plaintiffs on May 20, 2009. Following receipt of the offers of judgment, plaintiffs attempted to reach agreement with the defendants concerning reimbursement of the attorneys' fees and costs due to them, to avoid what they view as unproductive fees litigation. These attempts were not successful. Accordingly, plaintiffs now are forced to expend the substantial time necessary to compile a proper fee petition.

Plaintiffs' counsel have carefully documented their time expenditures and have exercised billing judgment in order to ensure the reasonableness of their overall fee request. Exh. 2 (Affidavit of Joyce E. Smithey). Moreover, counsel has taken care to organize this petition and its supporting records in accordance with this Court's Rules and Guidelines. The painstaking care counsel has taken in preparing this fee application should reduce the Court's and the defendants' time in addressing it, consistent with the Supreme Court's admonition that "a request for attorneys' fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

Compensation is sought for work in the following categories:[5]

### a.  Case development, background investigation and case administration

As noted above, prior to filing suit in this case, plaintiffs' counsel contacted defendants to gauge their interest in avoiding litigation of this matter entirely. Counsel drafted a detailed seven (7)-page letter to defendants analyzing the liability of the defendants. While the defendants sent a

---

[5] If a litigation phase is omitted, that is because no compensation is sought for work in that category.

standard acknowledgement of notice of the case, they did not make any further efforts to resolve the matter.

The tasks within this phase include initial telephone calls, correspondence, and meetings with both of the plaintiffs about their cases. Time was devoted to regular communications with the clients. Both plaintiffs were novices to litigation and had numerous questions about the procedures for a lawsuit, privilege, obligations to preserve documents, and potential claims and damages, among other things. Counsel reviewed a large number of documents provided by both plaintiffs, including police reports, correspondence, and documents suggesting other members of the Company were also assaulted by Mr. D'Camera.

Additionally, counsel investigated and developed the facts of the case, including conversations with a reporter who had researched the assaults. Counsel's investigation also involved locating and communicating with numerous potential witnesses. This investigation led to the discovery of other victims of Mr. D'Camera within the Company. Counsel's investigation also included numerous requests to police departments via the Public Information Act and the Freedom of Information Act, including police records relating to the plaintiffs' criminal complaints, police records involving other sexual misconduct and arrests involving Mr. D'Camera, and records on Mr. D'Camera's suicide. Additionally, counsel investigated allegations of similar problems at other volunteer fire companies within the County, including specific allegations raised at the Riviera Beach Volunteer Fire Company. Counsel also researched similar cases in other jurisdictions, other cases pending against the County, the organizational structure of volunteer fire departments, the relationship between the County and volunteer fire departments, and benefits and compensation available for volunteer firefighters.

Counsel also researched and located experts to help develop the facts of the case. After numerous calls to locate the appropriate experts, counsel collected and investigated the information and documents necessary for these experts to perform their evaluations, including requesting the medical records of the plaintiffs, school records, and tax documents. Time was devoted to regular communications with these experts. Plaintiffs eventually disclosed three experts: a psychiatric expert to testify about plaintiffs' emotional conditions after the assaults; a vocational expert to testify to the plaintiffs' diminished earnings capacity as a result of the assaults; and an economist to analyze the economics of the lost wages as a result of the diminished earnings capacity. Defendants similarly retained multiple experts, demanding Independent Medical Examinations of both plaintiffs by their expert psychiatrist and evaluations by their vocational expert. Counsel spent time preparing her clients for these expert evaluations.

Counsel also performed preliminary legal research on the Local Government Tort Claims Act, the ethics of direct contact with members of the Company and County employees, the applicability of privilege to a private investigator, and removal, among other things. Counsel also performed research to explore the viability of a worker's compensation claim.

Fees sought for the case development stage total $32,326, including 82.60 hours for Joyce Smithey, and 72.80 hours for paralegal Donna McHugh.

### b. <u>Pleadings</u>

Counsel devoted necessary time to examining the facts and researching the law in order to prepare the Complaint and related service papers. Counsel drafted an EEOC Charge of Discrimination for John Doe No. 2. Counsel also prepared a Complaint, and subsequently drafted an Amended Complaint.

Fees sought for the pleadings phase of the case total $14,211.50, including 40.90 hours for Joyce Smithey, 2.90 hours for associate Lance Young, 2.10 hours for law clerk Michael Miller, and 13.80 hours for paralegal Donna McHugh.

### c.        Interrogatories, document production, and other written discovery

Plaintiffs served initial discovery requests to the defendants while the case was still pending in the Circuit Court for Anne Arundel County. The case was removed to this Court, and the Court issued a Scheduling Order on December 17, 2008, 11 months after plaintiffs had served their initial discovery requests. At that time, plaintiffs drafted and served new discovery requests on the defendants - each plaintiff served a set of discovery on each defendant. When plaintiffs received the County's responses to discovery, the responses were insufficient and nonresponsive. Counsel was in the process of drafting a letter to the County regarding these insufficiencies at the time the Notice of Acceptance of Offers of Judgment was filed.

It is anticipated that the defendants will argue that counsel is not entitled to be compensated for any work performed between the February 25, 2009 offers of judgment and plaintiffs' acceptances of those offers within the 10 days permitted by Fed. R. Civ. P. 68(a). Much of the work performed during this time period was in the written discovery phase of the case. While defendants are correct that plaintiffs are not entitled to fees incurred during this time pursuant to Rule 68, plaintiffs *are* entitled to these fees as prevailing parties on their claims under 42 U.S.C.S. Section 1983 and Title VII of the Civil Rights Act of 1964. Grissom v. Mills Corp., 549 F.3d 313, 319 (4th Cir. 2008) (a Rule 68 judgment represents a judicially sanctioned change in the relationship between the parties for purposes of the various federal fee-shifting statutes). Accordingly, the inquiry as to work performed during this time period is the number of hours reasonably expended multiplied by a reasonable hourly rate.

It would have been unreasonable for counsel to ignore deadlines occurring during the time period while plaintiffs considered the offers of judgment. For example, plaintiffs' responses to the four sets of discovery propounded by defendants were due on the same day as the deadline to respond to the offers of judgment (already an extended discovery deadline pursuant to agreement by counsel). Further, defendants demanded that the plaintiffs meet with defendants' experts during this period, including Independent Medical Examinations with defendants' psychiatric expert and an evaluation by defendants' vocational expert. These meetings required counsel to prepare the plaintiffs and answer numerous questions from the plaintiffs. Counsel could not ignore the discovery deadlines in the case and the meetings, demanded by defendant, that were scheduled during the time period. Counsel is aware of no case law that holds that consideration of a settlement offer is good cause to ignore deadlines in a case.

Fees sought for the written discovery phase of the case total $30,828.00, including 79.10 hours for Joyce Smithey, and 68.60 hours for paralegal Donna McHugh.

### d.      Motions practice

A substantial proportion of counsel's time in this matter was devoted to motions practice. As stated above, counsel filed a Motion for Order Permitting Plaintiffs to Proceed under a Pseudonym along with the Complaint in the Circuit Court for Anne Arundel County. Subsequently, the County filed a Motion to Dismiss, or in the Alternative Motion for Summary Judgment and Motion to Stay Discovery. The Company also filed a Motion to Dismiss. The plaintiffs briefed responses to all of the motions. The plaintiffs then filed an Amended Complaint in the Circuit Court for Anne Arundel County. The Company then filed another Motion to Dismiss relating to the claims in the Amended Complaint. The defendants then filed a Notice of Removal to this Court. The County then filed another Motion to Dismiss and Motion for

Summary Judgment. Once again, plaintiffs briefed responses to all of these motions. The

Company then filed another Motion to Dismiss, to which the plaintiffs once again briefed a

response. Plaintiffs' counsel drafted no less than four (4) opposition briefs in this case. The Court

held a hearing on these motions on December 17, 2008. The Court denied the Company's motion

in its entirety and denied the County's motion on all but one count.

Fees sought for the motions practice phase of the case total $46,486.00, including 135.20

hours for Joyce Smithey, 22.80 hours for associate Lance Young, 3.0 hours for law clerk

Michael Miller, and 24.60 hours for paralegal Donna McHugh.

### e.    Attending Court hearings

The Court convened a hearing in this case to hear oral argument on the defendants'

motions to dismiss and motion for summary judgment. Consistent with the firm's normal

practice, counsel spent substantial time preparing for and attending this hearing. As stated above,

Ellen Flynn handled the December 17, 2008 hearing before the Court due to Ms. Smithey's

unavailability due to surgery. Plaintiffs voluntarily reduced Ms. Flynn's time by 6.50 hours to

avoid duplicative charges for Ms. Flynn to review the file and get up to speed. Additionally, Ms.

Smithey has voluntarily reduced her time by 5.0 hours for time spent assisting Ms. Flynn in her

preparation for the hearing.

Fees sought for the hearings phase of the case total $7,121.00, including 6.0 hours for

Joyce Smithey, 18.0 hours for partner Ellen Flynn, and 1.40 hours for paralegal Donna McHugh.

### f.    ADR

Plaintiffs and their counsel made determined efforts to avoid litigation in this matter and

to settle the case once filed. Prior to filing suit, plaintiffs' counsel sent a letter to the defendants

extending an invitation to avoid the litigation entirely by making a reasonable settlement offer.

Once the litigation moved forward, the parties attended a Settlement Conference before Magistrate Judge Bredar. In preparation for the Settlement Conference, counsel researched settlements in sex abuse cases, including preparing a spreadsheet of cases in different jurisdictions and their settlement amounts. Additionally, counsel spent time with the plaintiffs to arrive at a demand amount. Further, counsel drafted an eight (8)-page mediation letter to Magistrate Judge Bredar pursuant to this Court's January 5, 2009 Order. Counsel continued to discuss settlement with defendants during the time period that the offers of judgment were pending. Again, prior to filing this fee petition, plaintiffs' counsel sent defendants a letter beseeching them to negotiate a reasonable settlement of plaintiffs' fees and costs, in order to avoid the significant time and expense involved in litigating a fee petition. When defendants asked for more than a month to consider settlement, plaintiffs' counsel agreed to wait.

The defendants in this case elected to litigate this case rigorously, and again now with respect to the fees and costs due to the plaintiffs, as they of course have the right to do. Having caused plaintiffs to incur significant fees and costs to vindicate their constitutional rights, however, defendants should not be heard to complain about the price of plaintiffs' success.[6] "[Defendants] chose to mount a vigorous defense, which is their right. But having chosen to put the plaintiff[s] to the test, they cannot now bemoan the consequences of [their] passing it." Johnson v. Eaton, 884 F.Supp. 1068, 1071, n.4 (M.D. La. 1995).

Fees sought for the ADR phase of the case total $18,188.00, including 54.30 hours for Joyce Smithey, 2.80 hours for partner Charles S. Fax, 11.20 hours for paralegal Donna McHugh, and .30 hours for paralegal Heather Pike.

---

[6] In fact, defendants were well aware of the fees and costs incurred in this matter as it progressed. Plaintiffs' counsel submitted quarterly statements to defendants, pursuant to the Rules and Guidelines, on August 11, 2008, November 10, 2008 and February 5, 2009, showing the amount of time spent on the case and the total value of that time. The amounts stated in those letters were significantly higher than those sought in this petition because of the numerous reductions plaintiffs' counsel has voluntarily made.

g.      **Fee petition preparation**

Time and expenses required for the preparation of a petition for attorneys' fees and costs are compensable. <u>Ganey v. Garrison</u>, 813 F.2d 650, 652 (4th Cir. 1987). A proper fee application is necessarily time-consuming to prepare, as well as burdensome for the Court to review. For this reason, plaintiffs tried to reach agreement with the defendants concerning payment of reasonable attorneys' fees, just as they did prior to resorting to suit at the outset. In fact, plaintiffs reminded defense counsel that formal filing of a fee petition would increase plaintiffs' fees significantly and unnecessarily. Regrettably, the plaintiffs were unable to come anywhere close to an agreement with the defendants concerning the fees due.

Plaintiffs' counsel have devoted substantial time to reviewing and analyzing for inclusion or exclusion each time entry and expense incurred. Supporting documentation, including affidavits and other exhibits, were gathered to attest to the prevailing market rates for such work and the reasonableness of the time devoted to this litigation.

Fees sought for the fee petition preparation phase of the case total $13,365.00, including 35.40 hours for Joyce Smithey, 0.10 hours for partner Charles S. Fax, and 26.60 hours for paralegal Donna McHugh.[7]

To summarize plaintiffs' fee request on a phase-by-phase basis, time expended, billed, and fees charged are as follows:

| **Litigation Phase** | **Hours Expended** | **Hours Billed** | **Fees Charged** |
|---|---|---|---|
| Case Development | 166.30 | 155.40 | $ 32,326.00 |
| Pleadings | 60.80 | 59.70 | $ 14,211.50 |
| Discovery | 149.40 | 147.70 | $ 30,828.00 |

---

[7] Since work on this fee litigation will continue into the future, plaintiffs are seeking recovery in this petition through June 30, 2009 only, and will provide a time supplement in their reply memorandum.

| | | |
|---|---|---|
| Motions Practice | 187.20 | 185.60 | $ 46,486.00 |
| Court Hearings | 37.60 | 25.40 | $   7,121.00 |
| ADR | 120.70 | 68.60 | $ 18,188.00 |
| Fee Petition | 63.50 | 62.10 | $ 13,365.00 |
| **Total All Phases** | **785.50** | **704.50** | **$162,525.50** |

## B.    Plaintiffs Also Should Recover Their Expenses

The Fourth Circuit has held that plaintiffs who are entitled to attorneys' fees, as in this case, also are entitled to recover their reasonable expenses as part of the award of attorneys' fees. Daly v. Hill, 790 F.2d at 1084; Wheeler v. Durham City Bd. Of Educ., 585 F.2d 618 (4th Cir. 1978).

Under the Fourth Circuit standard of Daly and Wheeler, plaintiffs should be awarded all reasonable expenses as part of their attorneys' fees:

> Litigation expenses such as supplemental secretarial costs, copying, telephone costs and necessary travel, are integrally related to the work of an attorney and the services for which outlays are made may play a significant role in the ultimate success of litigation . . .

Wheeler, 585 F.2d at 623. See also 122 Cong. Rec. at 12,160 (October 1, 1976) (quoting the House debate on Section 1988 as follows: "the phrase 'attorneys' fee' would include the value of the legal services provided by counsel, including all necessary expenses incurred in furnishing effective and competent representation.")

As reflected in the tabulations of costs attached to Ms. Smithey's Affidavit (Attachment C), plaintiffs have requested a total of $25,443.97 in litigation-related expenses. These expenses are of the type normally charged to fee-paying clients and are fully documented by contemporaneous records. Moreover, these expenses are of the sort specifically covered by this Court's Rules and Guidelines.

**C.     Plaintiffs' Counsel Have Responsibly Exercised Billing Judgment to Ensure the Reasonableness of This Request**

In her role as supervising counsel in this case, Ms. Smithey delegated tasks to paralegals and associates who charge at the lowest rates. Moreover, in the exercise of billing discretion, plaintiffs' counsel has carefully reviewed billing records to eliminate duplicative time and time that seemed to have been inefficiently spent. To accomplish this task in the cleanest way possible, so as to minimize the attention that will be required by the Court, counsel reviewed all of the time entries of all counsel in the case, phase by phase, to determine where reductions were appropriate.

Over and above the reductions made pursuant to billing judgment, RLLS has already agreed to bill defendants at rates that are far lower than their regular billing rates. If RLLS had not voluntarily agreed to reduce its rates, the overall lodestar would increase by another $50,639.00 as shown below:

| Name | Hours Billed | Fees Billed (Reduced Rate) | Fees at Regular Rate | Fee Reduction |
|---|---|---|---|---|
| Joyce E. Smithey | 433.50 | $125,715.00 | $171,232.50 | $45,517.50 |
| Charles S. Fax | 2.90 | $ 1,160.00 | $ 1,406.50 | $ 246.50 |
| Ellen B. Flynn | 18.00 | $ 5,220.00 | $ 7,110.00 | $ 1,890.00 |
| Lance Young | 25.70 | $ 4,626.00 | $ 5,268.50 | $ 642.50 |
| Michael Miller | 5.10 | $ 586.50 | $ 739.50 | $ 153.00 |
| Donna K. McHugh | 219.00 | $ 25,185.00 | $ 27,375.00 | $ 2,190.00 |
| Heather Pike | .30 | $ 33.00 | $ 34.50 | $ 1.50 |

Overall, accordingly, in their good faith exercise of billing judgment, plaintiffs have voluntarily made deductions to this petition totaling $70,299.00. Given the considerable reductions in fees

being made voluntarily by counsel, plaintiffs should be awarded all fees and costs requested in this petition, without further reduction.

**III.**   **Conclusion**

In summary, the experience and skill of plaintiffs' counsel and the quality of representation, which resulted in one of the largest settlement payouts in the history of the County, justify the requested billing rates. Plaintiffs' counsel have sought compensation only for work reasonably necessary to successful pursuit of plaintiffs' claims, and should be awarded attorneys' fees commensurate with the substantial vindication they have received. As such, plaintiffs should be granted the full compensation requested in this reasonable Petition for Award of Attorneys' Fees and Expenses. This includes attorneys' fees of $162,525.50 and expenses of $25,443.97, for a total of $187,969.47.

Respectfully Submitted,

/s/

_____
Joyce E. Smithey, Esquire
Federal Bar No. 27531
Rifkin, Livingston, Levitan & Silver, LLC
225 Duke of Gloucester St.
Annapolis, MD 21401
410.295.0212 (Phone)
410.295.0213 (Facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 6th day of July, 2009, a copy of Plaintiffs' Memorandum in Support of Motion for Attorneys' Fees and Costs was electronically filed and served in accordance with the electronic filing guidelines on:

Hamilton F. Tyler, Esq.
Senior Assistant County Attorney
Anne Arundel County Office of Law
2660 Riva Road, 4th Floor
Annapolis, Maryland  21401

*Attorney for Defendant, Odenton Volunteer*
*Company Inc. of Odenton Anne Arundel*

Rhonda L. Weaver, Esq.
Senior Assistant County Attorney
Anne Arundel County Office of Law
2660 Riva Road, 4th Floor
Annapolis, Maryland  21401

*Attorney for Defendant, Anne Arundel County, Maryland*

_____/s/_____
Joyce E. Smithey